By the Court. — Monell, J.
Upon the argument of this appeal, the appellant’s counsel was understood to rest his right to recover, not exclusively but chiefly, upon the ground, that the delicate and confidential relation of attorney and client, which had existed between these parties, would not allow the respondent to take or receive any interest in, or benefit from, any claim which Willock might have or assert, under his contract with Hogan, which had its foundation in the insufficiency of the proceedings instituted and conducted by Fogerty for his client.
The counsel, however, was not understood to abandon the ground, that the benefit which the respondent had derived from the Willock suit against Hogan, was in consequence of his own lack of skill and correct judgment, in instituting and conducting the proceeding, he was employed to institute and conduct, to extinguish the rights and interests of Willock under the contract.
The mode adopted by the respondent to extinguish such rights and interests, was by a public sale, after notice, in pursuance of the provisions of the contract.
It is certainly very questionable whether such a sale, although authorized by the contract, was or could be made effectual to foreclose the contractor’s interest. The question is left open and undecided in the case of Chace v. Hatch, 4 Robt. 89, which was upon a similar contract, but with an intimation that the contractor is not shut out by such a sale, and may, upon a sufficient excuse, be relieved from the forfeiture.
The contract in this case provided, that if Willock refused or neglected to complete the houses, or to diligently prosecute the work, or if he suspended the work for ten days, Hogan might demand payment of his advances, and upon. refusal to pay, might sell at public or private sale, all of Willock’s interest in the premises.
*174 The forfeiture under this contract on the part of Willock, and the right on the part of Hogan to rescind, rested wholly upon the ten days' delay. If the delay in fact occurred, Hogan could at once sell. But in what manner or by whom was that fact to be determined ? Could Hogan’s saying or claiming that it had occurred, be sufficient, and would that conclude Willock, and for ever preclude his disputing the fact ? Assuredly not. The right to sell was unquestionable; but it was, necessarily, a sale at the risk of being set aside, if it should afterwards be made to appear, that there had in fact been no default; or, that it had become impossible to perform, either by the act of Grod, or of the law, or for any other sufficient reason.
The sale, therefore, under the power contained in the contract, was effectual only so far as it put Willock out and Hogan in possession of the premises, and then cast the burden upon Willock of showing, if he could show it, that there had not been a default, or of excusing it if there had been. But it left it competent for Willock, at any time afterwards, to apply to the court to be relieved from the forfeiture consequent upon it. From such an application Willock would not be, and was not precluded by the sale ; nor could he be precluded in any manner, short of a judgment in an action to foreclose his rights and interests under the contract.
Besides the high and peculiarly responsible duty of an attorney towards his client, and the fidelity which he owes to his cause and his interests, he is required to be learned and skillful in the practice of his profession. He must have sufficient learning to be able to determine, with reasonable accuracy, upon the appropriate remedies for enforcing or securing the rights of his client, and sufficient skill to conduct the proceedings appropriate to such remedies.
If an attorney fails in any of these respects, he may, and sometimes does, not only forfeit all claims for com *175 pensation, but renders himself liable to his client for any damage which he may thereby sustain.
But the question of any supposed lack of learning or of skill on the part of the respondent, in conducting the proceedings for his client, is not, necessarily, much involved in the consideration of the questions now before us. Indeed, if this were an action by the respondent against Hogan’s representative, to recover his compensation for his services in those proceedings, it is doubtful if we could say that he should not be paid, upon the mere ground that such proceedings produced no beneficial result (Bowman v. Tallman, 40 How. Pr. 1).
But the decision must be placed upon another and different ground—a ground which involves, not the skill nor the learning, but the fidelity of an attorney to the interests of his client; and which forbids his trafficing, in the smallest degree, with such interests, by collusion or otherwise, with persons, who in respect to such interests, have occupied an attitude of hostility towards his client.
Some facts stand out prominently in this case. One is, that the respondent employed the attorneys to bring the action of Willock against Hogan. Another, that he was interested, to the extent of two-thirds, in the result of that suit, having acquired such interest directly by assignment from Whillock. Another, that the foundation of the action was the insufficient title Hogan had acquired under the foreclosure proceeding, which the respondent had himself conducted for Hogan. And another, that he did receive in that suit, and in consequence of it, a portion of the money which had been obtained by a settlement of it, and which settlement was made in consequence of of the adverse testimony of the respondent on that trial.
I am aware, that the fact has been found by the *176 court at special term, that the respondent was employed by Hogan, with the concurrence and consent of Willock, to extinguish the claim of certain lien-holders on the premises, and for that purpose, and not otherwise, he made the sale of the premises, under the power contained in the contract, and procured the release from Willock.
So much of this finding of fact as relates to the purpose of the release, is probably sustained by the evidence ; but I "do not find any evidence sufficient to sustain the remainder of the finding; and a careful examination of the testimony shows, I think, that the respondent’s employment by Hogan was to extinguish all of Willock’s rights and interests under the contract; and that whatever motive the latter may have had, in concurring in, and consenting to, the foreclosure proceeding—whether to defeat, and thereby to defraud his creditors who had obtained liens upon the premises, or otherwise, it is very evident that Hogan’s intention and desire was, to rescind the contract, and put an end to all claims and rights of Willock under it.
But even if the evidence did establish that the purpose of the foreclosure was to accomplish the defeat of the lien creditors, and that Hogan, Willock and the respondent, conspired to effect such purpose by a foreclosure, I am unable to see in it any justification for what has since transpired. Such a purpose need not be stigmatized, and it is enough for the present to say, that it furnishes no foundation upon which a defense can be raised. A party who has advised or assisted in perpetrating a wrong, cannot afterwards be allowed to use the knowledge he has. acquired, to secure a pecuniary benefit to himself, by an attack upon the proceeding he had devised and conducted, to consummate the wrong.
I am also aware of the fact, which has also been found by the court, that Willock was indebted to the *177 respondent in a considerable sum, for professional services, and that he took from Willock a transfer of two-thirds of his claim against Hogan, in satisfaction of such indebtedness.
But such fact does not, in my judgment, change the fispect of the case, or furnish a reasonable excuse for obtaining payment out of his own client, of a debt due from Willock, by a resort to an action whose foundation was a defective and useless proceeding, which such client had employed him to conduct, and which, he had failed to make effectual.
The action instituted by the respondent in the name of Willock against Hogan, if it had no foundation in the errors which the respondent had previously committed, must have been brought for the purpose of harrassing Hogan, or vexing him into a settlement. In one or the other of those ways only could the respondent have hoped to succeed. Hogan would be advised that the sale at the Merchant’s Exchange was, of itself, no bar to the action, and the release of Willock, the respondent knew, as he afterwards testified, was no barrier.
There was reasonable ground, therefore, for supposing that the action would' be successful, or that, operating upon the fears of Hogan, it would produce a compromise and settlement of the claim.
The latter was the result, and it is enough to say that the transaction cannot be countenanced or upheld.
It is fundamental, in respect to the duty of an attorney towards his client, that he shall not use any information which he has derived from his client to the prejudice or injury of his client, and especially, that he shall not act in opposition to his client’s interests. And the rule is, as laid down in 1 Ferg. Jr. Prac, 37, that “lest any temptation should exist to violate professional confidence, or to make any improper use of informa *178 tion which an attorney has acquired confidentially, as wed as upon the principles of public policy, he will not be permitted to be concerned on one side of proceedings, in which he was originally in a different interest.”
I regret that I am obliged to differ from the conclusions of the learned justice who tried this action at the special term. He was doubtless somewhat influenced, as I have found it difficult to resist being, by the fact, that the relation of attorney and client had long before ceased to exist between the respondent and Hogan; as well as the fact, that he had, for several previous years, been acting as the attorney for Willock, and that to obtain payment of a hopeless debt for those services, he became a party, for no more improper motive, to, and instigated the action which was brought in Willock’s name against Hogan.
The law, however, is too regardful of the rights of persons who have fiduciary relations, to allow any betrayal of the trust and confidence. Trustees of all kinds are held to a strict accountability, and the interests of cestui gue trusts are watched with constant care. As was said by the late Vice-Chancellor Sahdford. in Poillon v. Martin (1 Sandf. Ch. 572), “ It is a great principle of equity, that he who bargains in a matter of advantage with a person placing confidence in him, is bound to show that a reasonable use has been made of that confidence.’
But the duties and obligations of mere trustees, whether enjoined by statute or derived from the principles of equity, do not partake of that peculiar and delicate relation which subsists between an attorney and his client. In his case there is more than a legal claim upon his fidelity. The honor of his profession and the due administration of justice is involved, and any taint upon his honor will cast its *179 shadow, in some degree, upon the collective body of his associates at the bar.
Luckily, and to the credit of the profession, few reported cases are found which involve a departure from professional faith and duty. But such cases are not needed to either .illustrate or enforce so obvious a principle as condems the transaction in this case.
I will, however, refer to a single case which is somewhat analogous to the one before us. Case v. Carroll (34 N. Y., 585), was an action to compel an attorney to convey certain premises to the plaintiff, the title to which he had obtained in violation of his duty to his client, and the court say:—“The general allegation that he was the defendant’s counsel, and undertook to conduct the foreclosure suit for their benefit, is sufficient to create a trust, which a court of equity will enforce against him, by requiring him to convey the legal title to the plaintiffs.”
The judgment must be reversed, and a new trial had, with costs to the appellant to abide the event.